UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jean F. Nyambio,

                Plaintiff,                Case No.
                                                    Hon.

vs.

NorthStar Anesthesia of Michigan, PLLC,
*a Michigan Domestic Professional
Limited Liability Company*,

                Defendant.

---

MORGAN & JONES, PLLC
Barbara D. Urlaub (P38290)
Steven D. Cole (P85165)
Attorneys for Plaintiff
30500 Northwestern Hwy., Suite 425
Farmington Hills, MI 48334
T: (248) 865-0001
burlaub@work-lawyers.com
scole@work-lawyers.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Jean F. Nyambio (hereinafter "Plaintiff"), by and through his attorneys, Morgan & Jones, PLLC, and for his Complaint against Defendant NorthStar Anesthesia of Michigan, PLLC, states as follows:

1. Plaintiff Jean F. Nyambio brings this action for discrimination on account of a disability and perceived disability, failure to accommodate a disability, failure to engage in an interactive process, interference, and retaliation in violation of the Americans with

1

Disabilities Act of 1990 ("ADA"),  as amended, 42 U.S.C. §§ 12101, *et seq.,* and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L.A. §§37.1101, *et seq.*; and discrimination on account of race and national origin and interference with his rights and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2201, *et seq*.

## PARTIES

2.     Plaintiff Jean F. Nyambio resides in the City of Troy, in Oakland County, State of Michigan, within the Eastern District of Michigan.

3.      Defendant NorthStar Anesthesia of Michigan, PLLC, *a Michigan Domestic Professional Limited Liability Company,* is organized under the laws of Michigan, has its registered agent office in East Lansing, Michigan, and does business within the Eastern District of Michigan at a number of hospitals including multiple Corewell Health and Detroit Medical Center ("DMC") locations.

4.     At all times relevant to this action, Plaintiff was employed by Defendant as a Certified Nurse Anesthetist to perform anesthesia services at DMC Harper Hutzel Hospital in Detroit, Michigan.

## JURISDICTION AND VENUE

6.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

7.     On January 24, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that Defendant  discriminated

against him on of account of a disability, failed to accommodate a disability, interfered with his rights, and retaliated against him in violation of the Americans with Disabilities Act of 1990 ("ADA") , as amended, 42 U.S.C. §§12001, *et seq.*; and also engaged in discrimination against him on account of his race and national origin, interfered with his rights and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§2000e, *et seq.* (Exhibit A)

8.     Plaintiff's Charge of Discrimination was filed within the 300-day period after April 3, 2024, when Plaintiff was notified that Defendant had terminated his employment.

9.     On April 15, 2025, the EEOC emailed its Determination and Notice of Rights to Plaintiff with respect to the above referenced Charge of Discrimination. (Exhibit B)

10.    This Court has subject matter jurisdiction over Plaintiff's federal question claims under and pursuant to 28 USC § 1331 (federal question jurisdiction); 42 U.S.C. §§ 2000e, *et seq* (violation of Title VII); and 42 U.S.C. §§ 2601, *et seq.* (violation of the ADA).

11.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims brought under Michigan's ELCRA and PWDCRA.

12.    This Court has personal jurisdiction over Defendant because it maintains offices and engages in regular and systematic business and other activities within the Eastern District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

13.    Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides in and Defendant does business within the Eastern District of

3

Michigan and the events that give rise to this claim occurred within the Eastern District of Michigan. *See also* 29 U.S.C. §1132(e)(2).

14.    Venue also is convenient in this judicial district.

## STATEMENT OF FACTS

15.    Plaintiff is a black man, born in Cameroon in central Africa.

16.    Plaintiff is a Certified Nurse Anesthetist ("CRNA").

17.    Plaintiff has been continuously licensed by the State of Michigan since 2007.

18.    Plaintiff was hired by Defendant on or about June 28, 2015 as a CRNA at the DMC Harper Hutzel Hospital in Detroit, Michigan.

19.    During the course of his employment, Plaintiff's core job duties included:

    a.    Perform and document the pre-anesthesia assessment and evaluation of patients;

    b.    Obtain informed consent for anesthesia and related services;

    c.    Select, obtain, order, and administer preanesthetic medication or treatment;

    d.    Develop and implement an anesthesia care plan;

    e.    Select, obtain, prepare, and use equipment, invasive and non-invasive monitors, supplies, and drugs for the administration of sedation, anesthesia, and pain management services;

    f.    Select, order, obtain, and administer analgesic and anesthetic agents, adjuvant drugs, accessory drugs, fluids, or blood products necessary to provide anesthesia services;

    g.    Perform all aspects of airway management;

30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

MORGAN&JONES
LAWYERS FOR THE WORKPLACE

h.   Facilitate emergence and recovery from anesthesia by evaluating patient response, and selecting, ordering, and administering medications, fluids, and ventilator support to maintain patient stability during transfer;

i.   Initiate and administer post-anesthesia pharmacological or fluid support of the cardiovascular system;

j.   Initiate and administer respiratory support to ensure adequate ventilation and oxygenation in the post-anesthesia period;

k.   Evaluate the patients response to anesthesia and surgery;

l.   Provide post-anesthesia follow-up evaluation and care;

m.   Discharge patients from the post-anesthesia care unit; and

n.   Document patient care.

20.   Throughout the course of his employment with Defendant, Plaintiff performed each of these essential job functions with a high level of skill and competence.

21.   Plaintiff's personnel file contains no negative evaluations or criticisms of Plaintiff's job performance.

22.   In some but not all cases, Plaintiff was also required to assist co-workers in transferring patients to and from beds, gurneys and/or operating tables.

23.   Other co-workers, including technicians, nurses and DMC transport personnel were at all times available to and did assist in transferring patients to and from beds, gurneys and/or operating tables.

24.   In November 2020, Plaintiff was assisting a co-worker in transferring a patient, when the co-worker let go of the draw sheet upon which the patient was lying.

5

25. In order to prevent the patient from falling to the floor, Plaintiff grabbed the draw sheet, thus alone bearing the full weight of the patient.

26. Plaintiff injured his back in this incident.

27. Plaintiff's back injury caused him to be off work for approximately two weeks.

28. When Plaintiff returned to work following his November 2020 injury, he returned under physician-imposed job restrictions, including reduced working hours and no lifting over 20 pounds.

29. Defendant easily accommodated these restrictions for approximately over two years without incident or hardship.

30. On or about November 30, 2022, Defendant required Plaintiff to be evaluated by a physician of its choosing.

31. That so-called "independent" physician determined that Plaintiff could resume working without restrictions, effective February 22, 2023.

32. Plaintiff advised Defendant that he disagreed with this determination and needed the lifting restriction accommodation that had previously been granted by Defendant, with no hardship to Defendant.

33. While his request for accommodation was pending, Plaintiff worked, with considerable pain.

34. In April 2023, Plaintiff was subjected to verbal abuse by anesthesiologist Dr. Smith.

35. Dr. Smith's verbal attack included disparaging Plaintiff's competence and his accent. For example, Dr. Smith stated that he could not understand Plaintiff when he spoke and expressed frustration with people "like you" or "you people."

36. This was not the first incident of this sort with Dr. Smith.

37. Plaintiff reported the incident to Assistant Manager, Mike Kozlowski and a Manager named Lucy. Plaintiff also made a complaint to NorthStar's hotline.

38. On May 25, 2023, Plaintiff had a virtual meeting with HR representatives to discuss the incident involving Dr. Smith, wherein Plaintiff indicated he believed he was being discriminated against because of his race and national origin.

39. Plaintiff was assured that the incident was being investigated, but was never advised of the outcome of any such investigation, other than an email where he was told his "concerns" had been "appropriately addressed".

40. In August 2023, Plaintiff re-injured and or exacerbated his back injury, again while assisting in lifting a patient.

41. Plaintiff reported this work-related injury to Defendant.

42. On August 25, 2023, Plaintiff received a Notice of Disciplinary Action from Jenny Campos, Defendant's Senion HR Business Partner, for alleged incidents of tardiness and unexcused absences from January 2023 - August 3, 2023.

43. Plaintiff had not received any prior disciplinary action.

44. On September 10, 2023, in an email to Defendant HR representative Jenny Campos, Plaintiff again made a formal request for a reasonable accommodation of his

7

doctor-imposed lifting restrictions, and reiterated that he believed he was being "punished" on account of his disability and for having requested reasonable accommodation of his work restrictions.

45.     On or about October 16, 2023, Plaintiff's treating physician, Dr. Elliotte Moss, sent a detailed letter to Defendant, describing Plaintiff as suffering from chronic disc-bulging at L3-L4, spondylolisthesis at L5-S1, and "multilevel disc desiccation, most significant at L5-S1," among other diagnoses.

46.     Dr. Moss advised Defendant that with ongoing physical therapy, Plaintiff was "capable of working 24 hours a week with no lifting over 20 lbs,"

47.     In January 2024, Plaintiff requested a medical leave of absence.

48.     Defendant was granted a 2-3week vacation and/or time off in January 2024.

49.     Nevertheless, on January 16, 2024, Ms. Campos again reprimanded Plaintiff via email, claiming Defendant had no requests for leave for Plaintiff "on file."

50.     On January 18, 2024, Ms. Campos sent Plaintiff an "ADA packet" and asked Plaintiff to have Dr. Moss complete and return it to Defendant.

51.     After being corrected by Plaintiff, Ms. Campos admitted to Plaintiff on January 19, 2024 that Defendant had in fact been approved for "PTO" for January 1-January 13, but not for the third week in January.

52.     On January 23, 2024, Defendant acknowledged receipt Plaintiff's Leave Request #4871330 and provided him with information and forms necessary for

consideration and approval of an FMLA leave of absence from January 1, 2024 to February 1, 2024.

53. On January 26, 2024, Plaintiff provided FMLA certification documents and additional information prepared by Dr. Moss regarding Plaintiff's ongoing disabling medical condition.

54. Dr. Moss certified that Plaintiff suffered from a serious medical condition as defined by the FMLA, requiring the one-month leave requested, and further advising that Plaintiff could return to work on February 5, 2024, with restrictions of no lifting over 20 pounds and 24 hours of work per week.

55. Dr. Moss advised that Plaintiff was scheduled for re-evaluation in June 2024.

56. On or about February 23, 2024, Jenny Campos advised Plaintiff that, after consulting with corporate counsel, Defendant decided that it was not able to accommodate Plaintiff's doctor-imposed work restrictions and advised Plaintiff to contact Defendant's corporate recruiter Katie Ball to review "non-clinical" job openings.

57. Plaintiff contacted Ms. Ball, who directed him to an online source listing non-clinical job openings within NorthStar. No other direction or assistance was provided to Plaintiff.

58. Defendant's direction of Plaintiff to this online source, without direction or assistance, did not satisfy Defendant's burden under the ADA or PWDCRA to engage in an interactive process with respect to Plaintiff's request for reasonable accommodation of his disability.

59.     Plaintiff carefully reviewed the non-clinical job openings as requested by Defendant.  However, no jobs remotely comparable to Plaintiff's clinical CRNA were available, either in terms of compensation, responsibility or skill required.

60.     On April 4, 2024, Ms. Campos advised Plaintiff that because Defendant was "unable to accommodate your physician's documents permanent restrictions within NorthStar," his employment was being terminated.

61.     At all relevant times, the disabling physical conditions Plaintiff experienced substantially limited his ability to work, but these limitations were unrelated to his qualifications for and his ability to perform the essential functions of his job as a CRNA, with or without accommodation.

62.     Defendant could have accommodated Plaintiff's disabling physical conditions without undue hardship as it did for two years prior to February 2023, or by allowing Plaintiff to work as a CRNA in a quality assurance position. As it had for other similarly situated disabled CRNA's who were not black or foreign born.

63.     Defendant violated its legal duties to Plaintiff from February 2023 through April 3, 2024 when it:

a.      did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b.      did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

MORGAN & JONES
LAWYERS FOR THE WORKPLACE

30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

c.     was subjected to verbal abuse by anesthesiologist Smith;

d.     was issued the August 2023 disciplinary warnings;

e.     was not permitted to work in a non-clinical CRNA position; and

f.     was terminated on April 13, 2024.

## COUNT I
## VIOLATIONS OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")
### (Disability Discrimination, Failure to Accommodate and Retaliation)

64.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

65.     At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in Michigan's PWDCRA, M.C.L. §37.1101, *et seq.*

### Disability Discrimination

66.     The PWDCRA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

67.     At all times relevant to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of his job as CRNA at the DMC.

68.     At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as

having such a disability within the meaning of the PWDCRA because he was afflicted with a disabling physical condition, that substantially limited his ability to work, but which was unrelated to his qualifications for and his ability to perform the essential functions of his job as a CRNA, with or without accommodation.

69.     Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability, because it regarded Plaintiff as disabled, and/or because Plaintiff had a history of a disability when its representatives:

a.      did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b.      did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c.       was subjected to verbal abuse by anesthesiologist Smith;

d.      was issued the August 2023 disciplinary warnings;

e.      was not permitted to work in a non-clinical CRNA position; and

f.      was terminated on April 13, 2024.

### Failure to Accommodate

70.     The PWDCRA further requires employers to engage in a meaningful interactive process with employees with regard to reasonable accommodations.

12

71. At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship.

72. Defendant's duty to accommodate Plaintiff included, but was not limited to, accommodating Plaintiff's lifting restrictions (as it had for 2 years) and/or allowing Plaintiff to work in a non-clinical CRNA position.

73. At all times relevant, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

74. Defendant breached its duty under the PWDCRA to accommodate Plaintiff's disabilities when its representatives:

a. did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b. did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c. was subjected to verbal abuse by anesthesiologist Smith;

d. was issued the August 2023 disciplinary warnings;

e. was not permitted to work in a non-clinical CRNA position; and

f. was terminated on April 13, 2024.

### Retaliation

13

75. At all times relevant hereto, Defendant and its representatives had a duty under the PWDCRA not to retaliate against Plaintiff with respect to her employment, compensation, terms, conditions or privileges of her employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affect the employment status of Plaintiff in retaliation for his requesting work related accommodations for his disabilities and/or complaining about disability discrimination.

76. Notwithstanding said duties as set forth above, Defendant retaliated against Plaintiff because of his need for and/or for requesting work related accommodations for her disabilities when:

a. did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b. did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c. was subjected to verbal abuse by anesthesiologist Smith;

d. was issued the August 2023 disciplinary warnings;

e. was not permitted to work in a non-clinical CRNA position; and

f. was terminated on April 13, 2024.

77. As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of

14

employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT II
### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – RACE DISCRIMINATION AND NATIONAL ORIGIN

78.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

79.     At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

80.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against him based on his race and national origin.

81.     Defendant discriminated against Plaintiff on account of his race and national origin and violated Plaintiff's rights under the ELCRA when its representatives:

a.     did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b.     did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c.     was subjected to verbal abuse by anesthesiologist Smith;

15

d.      was issued the August 2023 disciplinary warnings;

e.      was not permitted to work in a non-clinical CRNA position; and

f.      was terminated on April 13, 2024.

82.     As a direct and proximate result of Defendant's discrimination on account of Plaintiff's race in violation of the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

## COUNT III
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT ("ADA")
### (Disability Discrimination, Failure to Accommodate, Failure to Engage in Interactive Process, Interference and Retaliation)

83.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

84.     At all relevant times, Plaintiff was an employee and Defendant was an employer within the meaning of these terms in the ADA, 42 U.S.C. §§ 12001, *et seq. See* 42 U.S.C. §12111(2), (4) and (5)

### Disability Discrimination

85.     The ADA makes it unlawful for an employer and its agents and representatives to discriminate against a qualified individual because the individual has a

16

disability, a record of a disability, or because the employer regards the individual as disabled.

86.     At all times relevant to this action, Plaintiff was a qualified individual with a disability pursuant to the ADA who, with or without accommodation, could perform the essential functions of his job as a CRNA.

87.     At all times relevant to this action, Plaintiff was a qualified individual with a disability, had a record of such a disability, and/or was regarded by Defendant as having such a disability within the meaning of the ADA because he was afflicted with disabling physical conditions, which substantially limited Plaintiff's ability to work, but which was unrelated to his qualifications for and his ability to perform the essential functions of job as a CRNA. with or without accommodation.

88.     Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability, because it regarded Plaintiff as disabled, and/or because Plaintiff had a history of a disability when its representatives:

a.     did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b.     did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c.     was subjected to verbal abuse by anesthesiologist Smith;

d.     was issued the August 2023 disciplinary warnings;

17

e. was not permitted to work in a non-clinical CRNA position; and

f. was terminated on April 13, 2024.

<b>Failure to Accommodate</b>

89. The ADA further requires employers to engage in a meaningful interactive process with employees with regard to reasonable accommodations.

90. At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship.

91. At all times relevant, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

92. Defendant breached its duty under the ADA to accommodate Plaintiff's disabilities when its representatives:

a. did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b. did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c. was subjected to verbal abuse by anesthesiologist Smith;

d. was issued the August 2023 disciplinary warnings;

e. was not permitted to work in a non-clinical CRNA position; and

f. was terminated on April 13, 2024.

18

**Retaliation**

93.     At all times relevant hereto, Defendant and its representatives had a duty under the ADA not to retaliate against Plaintiff with respect to his employment, compensation, terms, conditions or privileges of his employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affect the employment status of Plaintiff in retaliation for his requesting work related accommodations for his disabilities and/or complaining about disability discrimination.

94.     Notwithstanding said duties as set forth above, Defendant retaliated against Plaintiff because of his need for and/or for requesting work related accommodations for his disabilities when:

a.      did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b.      did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c.      was subjected to verbal abuse by anesthesiologist Smith;

d.      was issued the August 2023 disciplinary warnings;

e.      was not permitted to work in a non-clinical CRNA position; and

f.      was terminated on April 13, 2024.

19

95.     As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT IV
## VIOLATION OF TITLE VII – NATIONAL ORIGIN DISCRIMINATION

96.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

97.     At all times relevant, Plaintiff was an employee covered by and within the meaning of 42 U.S.C. §§ 2000e(f) and Defendant was her employer covered by and within the meaning of 42 U.S.C. §2000e (b).

98.     At all times relevant, Defendant was a "person" as this term is defined by 42 U.S.C. §2000e (a) with respect to the terms and conditions of Plaintiff's former employment.

99.     At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against his and interference with his rights based on his race and national origin.

100.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating

20

against Plaintiff on account of his race and national origin and depriving Plaintiff of his rights under Title VII.

101. Defendant discriminated against Plaintiff on account of his race and national origin and violated Plaintiff's rights under Title VII when its representatives:

a. did not engage Plaintiff in an interactive process with respect to the disabling physical condition he had been experiencing and his need for work related accommodations;

b. did not grant Plaintiff's requests for his previous accommodation lifting restrictions to be extended;

c. was subjected to verbal abuse by anesthesiologist Smith;

d. was issued the August 2023 disciplinary warnings;

e. was not permitted to work in a non-clinical CRNA position; and

f. was terminated on April 13, 2024.

102. As a direct and proximate result of Defendant's discrimination on account of Plaintiff's sex in violation of Title VII, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**Wherefore,** Plaintiff requests the following relief:

21

a.       A Judgment or Order of this Court reinstating Plaintiff to his former position in his original department or a comparable position;

b.       A Judgment or Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 to which he is found to be entitled, inclusive of back and front pay, bonus, and other compensation lost by Plaintiff due to termination of his employment and reimbursement for costs incurred by Plaintiff to replace lost benefits;

c.       A Judgment or Order of this Court awarding Plaintiff compensatory, punitive damages and attorney fees for Defendants' violations of the ADA, Title VII, ELCR & PWDCCA;

d.       A Judgment or Order of this Court awarding Plaintiff compensatory damages for mental anguish, emotional distress, humiliation and injury to his reputation;

e.       A Declaratory Judgment of this Court restoring Plaintiff's benefits retroactive to the date when his employment was terminated and requiring Defendant to fund these as though Plaintiff's employment had not been terminated;

f.       A Judgment or Order of this Court awarding Plaintiff pre and post judgment interest, costs, and attorney fees; and

g.       A Judgment or Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff Jean F. Nyambio, by his attorneys, MORGAN & JONES, PLLC, demands a trial by Jury.

Dated: July 14, 2025

Respectfully submitted,

By: */s/Barbara D. Urlaub*
MORGAN & JONES, PLLC
Barbara D. Urlaub (P38290)
Steven D. Cole (P85165)
Attorneys for Plaintiff
30500 Northwestern Hwy., Suite 425
Farmington Hills, MI 48334
T: (248) 865-0001
burlaub@work-lawyers.com
scole@work-lawyers.com